1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF NEVADA

8                                  * * *

9   PATRICIA WEISS,                    )
                                       )
10              Plaintiff,             )
                                       )        03:12-CV-00215-LRH-WGC
11   v.                                )
                                       )
12   ALERE MEDICAL, INC.,              )        ORDER
                                       )
13              Defendant.             )
                                       )
14   _____)

15          This is an employment dispute. Before the court is defendant Alere Medical, Inc.'s

16   ("Alere's") Motion for Summary Judgment (#26[1]). Plaintiff Patricia Weiss has responded (#27),

17   and Alere has replied (#30).

18   **I.    Facts and Procedural History**

19          Weiss began working for Alere as a part-time "Per Diem Telehealth Nurse" in May 2006,

20   when Weiss was 59. (Weiss Decl. #27-2, ¶ 3.) Weiss's duties involved working out of a "clinical

21   call center," where she remotely "monitor[ed], assess[ed], and educat[ed]" patients and provided

22   their physicians with information. (Litov Decl. #26-7, ¶ 3.)

23          Though the Alere call center was located in Reno, Nevada, Weiss lived in Henderson,

24   Nevada (about 460 miles away) with her fiancé and adult son. (Weiss Depo. #26-2, p. 14:2-9.) She

25   would fly to Reno, rent a car at the Reno airport, and stay at a local hotel for one week per month.

26   _____

        [1] Refers to the court's docket number.

1   (*Id*. at pp. 25-26.) Back in Henderson, Weiss also continued to work for Spring Valley Hospital,

2   located about 10 miles from her home. (*See id*. at pp. 19-20.)

3         Around March 2007, Weiss asked her supervisor, Brian Siler, about a "remote" nursing

4   position. (*Id*. at p. 36:3-22.) This position would have allowed Weiss to work from home. (*Id*. at p.

5   36:1-2.) Siler granted Weiss's request, and Alere and Weiss agreed that she would begin working

6   from her condominium in Nevada City, California (about 90 miles from Reno) on July 20, 2007.

7   (*Id*. at pp. 37:1-8; 39:4-17.) Weiss moved from Henderson to Nevada City in June 2007. (*Id*. at p.

8   39:4-17.)

9         A July 12, 2007 email from Weiss to Siler reveals that Alere had equipment shipped to

10   Weiss's condo. (Exs. to Geyman Decl. #29, Ex. D.) In this email, Weiss also memorialized her

11   understanding of the transition to a remote position: Weiss stated there would be "no more

12   commuting," but added, "If there is a [sic] issue with going remote in Nevada City (delivery, set up,

13   operational), be please advised that we can still resume previous per diem schedule." (*Id*.)

14         On Weiss's first day of remote work, her computer failed. (Weiss Depo. #26-2, p. 114:14-

15   19.) Weiss called her supervisor (who was not Siler on this particular day), and her supervisor told

16   her that she would need to come to the Reno call center to work. (*Id*. at p. 114-15.) Weiss refused,

17   telling her supervisor that she would not come in unless Alere sent a plane and paid for a hotel.

18   (Exs. to Geyman Decl. #29, Ex. E.)

19         A flurry of emails between Weiss and various Alere officials followed. In these emails,

20   mostly sent in July and August 2007, Weiss repeated her understanding that travel to the Reno call

21   center was not part of the remote position and that "[f]or many different reasons, traveling inerstate

22   [sic] weather, tolerance, time, ( [sic] prev e-mails shows only option to stay with Alere was remote

23   nursing. Also, there was never till last week mention of agreement for traveling to office if need

24   to." (*Id*. at Ex. H.) The Alere officials responded with "Alere's requirement that remote employees

25   be available to work on-site at the call center closest to them upon management request." (*Id*.)

26   When an Alere official asked Weiss if she was alleging "an agreement not to commute," Weiss

1  responded that she was not alleging an agreement, just that she "had gotten no response." (Lewis

2  Decl. #26-9, ¶ 6.)

3       The dispute over Weiss's obligation to commute escalated until Alere gave Weiss an

4  ultimatum: agree to the occasional-travel requirement or face separation from employment. (Litov

5  Decl. #26-7, ¶ 18.) Weiss contacted a lawyer, who wrote to Alere that Weiss had "an enforceable

6  contract" embodying the no-travel condition. (Exs. to Litov Decl. #26-8, Ex. J.) The lawyer's letter

7  also noted that "Pat has done traveling in her career and accepted this job because she got tired of

8  traveling and of course big cities." (*Id.*) This letter requested information necessary to investigate a

9  potential age discrimination claim against Alere. (*Id.*)

10      Following the lawyer's letter, nothing came of Alere's ultimatum. Weiss's computer had

11  been repaired in July 2007, and Alere did not ask Weiss to come in to the Reno call center until

12  March 2008.[2] (Litov Decl. #26-7, ¶ 26.) Throughout the period from July 2007 to March 2008,

13  Weiss received mixed performance reviews. (*See* Exs. to Geyman Decl. #29, Ex. C.) These reviews

14  critically identified Weiss's written communication skills: "The receivers of Pat's written

15  communications frequently can not [sic] figure out what she means." (*Id.*)

16      In March 2008, after Alere had been acquired by another company, Alere management

17  asked Weiss to come to Reno for additional training. (Litov Decl. #26-7, ¶ 28.) Weiss responded

18  that "medical issues," including "pending surgery," prevented her from attending. (Exs. to Litov

19  Decl. #26-8, Ex. N.) These medical issues centered on "a gallbladder situation." (Weiss Depo. #26-

20  2, p. 181:2-18.) Alere did not require Weiss to come to Reno, (Litov Decl. #26-7, ¶ 33), though

21  Weiss's surgery never occurred, (Weiss Depo. #26-2, pp. 197-99).

22      In September 2008, Alere terminated Weiss. Weiss's performance reviews had continued to

23  be rocky. (*See* Exs. to Lewis Decl. #26-10, Ex. E.) In particular, these reviews still noted Weiss's

24

25      [2] The parties dispute whether Alere changed its commuting policy for remote nurses as a result

26  of Weiss's complaints. (*See, e.g.*, Weiss Decl. #27-2, ¶ 6.) In the court's decision below, nothing hinges
    on this dispute.

1   poor communication skills and her "defensive[ness]" upon correction. (*Id*.) After Weiss's final

2   negative review, Alere officials recommended termination. (Lewis Decl. #26-9, ¶ 21.) According to

3   Weiss, however, "the alleged 'performance issues' [were] a subterfuge for the real reasons I was

4   terminated, my age-related disabilities and inability to drive long distances." (Weiss Decl. #27-2,

5   ¶ 9.)

6          Throughout the period that Weiss worked remotely for Alere, she traveled back and forth to

7   Las Vegas and to other cities from her Nevada City home. For example, she drove herself to Reno

8   and then flew to Las Vegas on July 25, 2007—four days after refusing to travel to the Reno call

9   center for work. (Exs. to Hilden Decl. #26-4, Ex. 12; Weiss Depo. #26-2, pp. 41-42. *See also*

10  Alere's Motion for Summary Judgment ("MSJ") #26, p. 5 n. 2.) Weiss flew again from Reno to Las

11  Vegas in August 2007, and from Las Vegas to Sacramento (and back) on seven separate occasions

12  from March to September 2008. (Exs. to Hilden Decl. #26-4, Ex. 14.) Weiss also drove from

13  Nevada City to Reno to pick up her fiancé on at least one occasion, and the couple took two trips in

14  the summer of 2008 involving shared driving responsibilities. (Weiss Depo. #26-2, pp. 113:4-12,

15  97-98.)

16         Weiss has alleged six counts in her complaint: (1) employment discrimination based on age,

17  (2) employment discrimination based on disability, (3) employment discrimination under Title VII,

18  (4) employment discrimination based on unlawful retaliation, (5) intentional infliction of emotional

19  distress, and (6) negligent infliction of emotional distress. Alere has moved for summary judgment

20  on all claims.

21  **II.     Legal Standard**

22         Summary judgment is appropriate only when "the pleadings, depositions, answers to

23  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

24  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

25  law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together

26  with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable

4

1   to the party opposing the motion. *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475

2   U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1154

3   (9th Cir. 2001).

4        The moving party bears the burden of informing the court of the basis for its motion, along

5   with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*,

6   477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party

7   must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

8   find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

9   1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

10        To successfully rebut a motion for summary judgment, the non-moving party must point to

11   facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson*

12   *School District No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect

13   the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

14   248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment

15   is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material

16   fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for

17   the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of

18   evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute;

19   there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

20   **III.   Discussion**

21        Weiss has failed to demonstrate a genuine issue of material fact with respect to all of her

22   claims. In particular, Alere has provided a legitimate, nondiscriminatory reason for Weiss's

23   termination, and Weiss has failed to produce evidence that this reason is pretextual.

24        **A.  ADEA Claims (Discrimination and Retaliation)**

25        To survive summary judgment on her age-based discrimination claim under the Age

26   Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Weiss must first establish a

5

1  prima facie case of age discrimination. *Shelley v. Geren*, 666 F.3d 599, 607-08 (9th Cir. 2012)

2  (holding that the *McDonnell Douglas* burden-shifting framework applies to ADEA claims at

3  summary judgment). The prima facie case includes a showing that "(1) [she] is a member of a

4  protected class; (2) [she] was qualified for [her] position; (3) [she] experienced an adverse

5  employment action; and (4) similarly situated individuals outside [her] protected class were treated

6  more favorably, or other circumstances . . . give rise to an inference of discrimination." *Whitman v.*

7  *Mineta*, 541 F.3d 929, 932 (9th Cir. 2008) (quotation marks and citation omitted). If Weiss

8  establishes a prima facie case, the burden of production (but not persuasion) shifts to Alere to

9  articulate some nondiscriminatory reason for the challenged action. *Shelley*, 666 F.3d at 608. Weiss

10 must then raise a genuine issue of material fact that the articulated reason is pretextual. *Id.*

11      Similarly, Weiss's retaliation claim under the ADEA requires her to make out a prima facie

12 case in order to survive summary judgment. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th

13 Cir. 1994). Such a case involves a showing that Weiss "engaged in a protected activity, [her]

14 employer subjected [her] to adverse employment action, and there is a causal link between the

15 protected activity and the employer's action." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919

16 (9th Cir. 1996) (quotation marks and citation omitted) (discussing a California state claim

17 interpreted analogously to the ADEA). Alere must then articulate a legitimate, nonretaliatory reason

18 for the action taken, and Weiss must produce evidence that this reason is pretextual. *See Wallis*, 26

19 F.3d at 889.

20      Here, Weiss has not made out her prima facie cases, and even if she had, Alere has

21 responded with an unanswered nondiscriminatory reason for Weiss's termination. Weiss has

22 successfully shown that she was within the class protected by the ADEA (age 40 and above, *see* 29

23 U.S.C. § 631(a)) and that she suffered an adverse employment action (termination, *see Nidds*, 113

24 F.3d at 919). She has also successfully shown that she engaged in a "protected activity" under the

25 ADEA by opposing what she believed to be Alere's discriminatory commuting policy. *See Trent v.*

26 *Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) (holding that opposition based on a

6

1  "reasonable belief" that the employment practice is unlawful will satisfy the "protected activity"

2  prong of the retaliation prima facie case).[3] But Weiss has neither presented evidence that

3  "individuals outside [her] protected class were treated more favorably," *Whitman*, 541 F.3d at 932,

4  nor evidence of a "causal link" between her opposition to Alere's commuting policy and her

5  termination, *Nidds*, 113 F.3d at 919.

6         For example, Alere has presented undisputed evidence that, of the 88 nurses working

7  remotely during Weiss's tenure, 77 were age 40 or older, 4 were Weiss's age, and 11 were older.

8  (Litov Decl. #26-7, ¶ 24.) And, importantly, all these nurses were subject to Alere's commuting

9  policy. (*Id*.) Weiss attempts to combat this evidence by arguing that commuting was not an

10  "essential function" of her position and by arguing that Alere knew that Weiss's "age-related

11  infirmities" limited her ability to commute. (Weiss's Response #27, pp. 10-11.) But these

12  arguments do not join the issue because they do not show that Weiss was discriminated against

13  "because of [her] age." *See* 29 U.S.C. § 623(a). Whether commuting was an "essential function" of

14  Weiss's position does not bear on Alere's alleged age discrimination unless Alere treated Weiss

15  differently "because of [her] age" with respect to this function. Weiss has presented no evidence of

16  such differential treatment. Similarly, Weiss's claim of discrimination on the basis of her

17  continually-shifting "age-related infirmities" does not sufficiently allege that age (rather than, for

18  instance, infirmity) was the "but-for" cause of Weiss's termination. *See Gross v. FBL Fin. Servs.,*

19  *Inc.*, 557 U.S. 167, 177 (2009).

20         Weiss has also failed to demonstrate a link between her opposition to the commuting policy

21  and her eventual termination. Alere asked Weiss to commute to Reno from Nevada City

22  twice—once in July 2007 and once in March 2008—and Weiss refused both times. (Weiss Decl.

23  #27-2, ¶ 5; Litov Decl. #26-7, ¶ 28.) It was not until six months after Alere's March 2008 request

24  that Alere terminated Weiss. (Litov Decl. #26-7, ¶ 34.) This six-month time gap undermines any

25

26
_____
       [3] The court assumes, without deciding, that Weiss's belief was reasonable.

1  inference of causation between Weiss's complaints and her termination. *See Yartzoff v. Thomas*,

2  809 F.2d 1371, 1376 (9th Cir. 1987) (holding that the "inference of a causal link is strengthened by

3  the closeness in time between particular events").

4        Even if Weiss had made sufficient showings as to her prima facie cases, she has failed to

5  rebut Alere's legitimate, nondiscriminatory reasons for her termination. Alere has cited Weiss's

6  inability to communicate clearly, her defensiveness upon being coached, and her lack of

7  improvement over time as reasons for Weiss's termination. (Litov Decl. #26-7, ¶ 34.) These

8  reasons are consistent with Weiss's performance reviews, which show low marks in these areas

9  throughout her time with Alere. (*See generally* Exs. to Geyman Decl. #29, Ex. C.) For example,

10  Weiss responded to one of her critical performance reviews with the following written comments:

11  
12  
13  
> Issues discussed are found to be intricate at best, combined with multiple ICO's, procedural issues which are changed on a regular basis, as reflected with numerous inconsistent views thru e-mails, meeting, etc. Also, with a large growth of Alere company, many new recent concerns presents themselves. It would, therefore, seem normal to make some errors in procedural work items. I will, however, continue to review all updated changes.

14  (Exs. to Lewis Decl. #26-9, Ex. A.) Weiss argues that this semi-coherence reflects a state of

15  agitation, (Weiss's Response #27, p. 13:7-11), but Alere has provided overwhelming evidence of

16  Weiss's inability to communicate clearly through written media. Indeed, Weiss did not initially

17  pass the "typing test" required of remote nurses. (Exs. to Litov Decl. #26-7, Ex. A.) Since Weiss's

18  ability to communicate effectively was a crucial part of her responsibilities as a remote nurse,

19  Alere's termination of Weiss on this basis was legitimate and nondiscriminatory. And since Weiss

20  has presented no evidence tending to show that Alere's cited reasons are pretextual, summary

21  judgment on the ADEA claims is appropriate.[4] *See Shelley*, 666 F.3d at 608.

22  ///

23

24  
25  
26        [4] Weiss's only evidence of pretext comes from her high "audit scores," which are one component of her performance reviews. This evidence is not sufficient to raise a genuine issue of material fact regarding pretext because Alere claims to have terminated Weiss on the basis of her written product, and the audit scores do not specifically address this product. *See Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005) (holding that "evidence of pretense must be specific and substantial in order to create a triable issue").

8

**B.  ADA Claims (Discrimination and Retaliation)**

Weiss has alleged discrimination and retaliation claims under the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. The contours of these claims are similar to

those of the ADEA claims, including the burden-shifting framework. *Raytheon Co. v. Hernandez*,

540 U.S. 44, 49 (2003). Under the ADA, covered employers are prohibited from discriminating

against "a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a).

The essential elements of a prima facie case of discrimination under the ADA include (1) that the

plaintiff is disabled within the meaning of the statute, (2) that the plaintiff is qualified, with or

without reasonable accommodation, to perform the essential functions of her job, and (3) that the

plaintiff suffered an adverse employment action because of her disability. *See Braunling v.*

*Countrywide Home Loans Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000).

Employers are further prohibited from retaliating against an employee because she has

"opposed any act or practice" made unlawful by the ADA. 42 U.S.C. § 12203(a). As with the

ADEA, retaliation claims under the ADA involve a prima facie showing that (1) the employee

engaged an activity the ADA protects, (2) the employee suffered an adverse employment action,

and (3) a causal link exists between the protected activity and the adverse employment action.

*Pardi v. Kaiser Found. Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004).

"Disability" is a term of art under the ADA. As relevant here, it embraces "a physical or

mental impairment that substantially limits one or more major life activities." 42 U.S.C. §

12102(1)(A).[5] Weiss claims to have "presented, in great detail, her physical, psychological, and age

related impediments to driving long distances" in opposition to Alere's Motion for Summary

Judgment. (Weiss's Response #27, p. 7:8-9.) This claim is accompanied by a citation to about two

pages of Weiss's deposition testimony. (Weiss Depo. #26-2, pp. 64:5-19; 90:14-91:21.) In these

---

[5] Because the acts giving rise to this suit occurred before January 1, 2009, the pre-2009 version
of the ADA applies. *Becerril v. Pima Cnty. Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009).

1  two pages, Weiss testifies to anxiety with respect to driving and to medication she received for a

2  gallbladder condition as well as for back pain.[6] (*Id.*) Throughout Weiss's argument, it is clear that

3  the substantially limited "major life activity" is the ability to drive long distances comfortably.[7]

4  (*See, e.g.*, Weiss's Response #27, p. 7:10-13.)

5       Alere has successfully demonstrated both that this ability is not a "major life activity" under

6  the pre-2009 ADA and that Weiss was not substantially limited in this ability. A "major life

7  activity" is a function "such as caring for oneself, performing manual tasks, walking, seeing,

8  hearing, speaking, breathing, learning, and working." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383

9  F.3d 879, 885 (9th Cir. 2004) (quoting 29 C.F.R. § 1630.2(I) (2004)). In other words, these are

10  functions "that are of central importance to most people's daily lives." *Toyota Motor Mfg.,*

11  *Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002). The ability to drive long distances is not one

12  of these functions. For example, in *Coons* the court implied that long-distance travel was not a

13  major life activity. 383 F.3d at 885. And other courts have determined that "driving is not itself a

14  major life activity" (at least under the pre-2009 version of the ADA). *Kellogg v. Energy Safety*

15  *Servs. Inc.*, 544 F.3d 1121, 1126 (10th Cir. 2008). In light of these precedents, Weiss's inability to

16  commute 180 miles round-trip from Nevada City to Reno upon request is not sufficient to establish

17  a disability within the meaning of the ADA.

18

19       [6] In her Complaint, Weiss alleges that she suffers from depression. (Complaint #1, ¶ 8.) Weiss
has elsewhere claimed that "adjustment disorder" and "age-related infirmities" comprise her disability.
20  (*See* Exs. to Geyman Decl. #29, Ex. F, p. 34:13-14 (adjustment disorder); Weiss's Response #27, p.
5:22-23 (age-related infirmities).)
21

22       [7] Weiss cites to about three pages of deposition testimony to support the contention that her
disability "substantially limited" her ability to stand, sit, perform household chores, and sleep. (Weiss's
23  Response #27, p. 92:9-12.) The only colorable support these pages lend is contained in Weiss's
statement, "I don't clean like I used to, I don't work out like I used to . . . I don't sleep like I used to."
24  (Weiss's Depo. #26-2, p. 92:9-12.) This testimony does not carry Weiss's burden to show that her
abilities were "significantly restricted as to the condition, manner or duration" of her ability to stand,
25  sit, perform household chores, and sleep. *Toyota Motor Mfg.*, 534 U.S. at 195 (2002). Indeed, this
conclusion is confirmed by Weiss's next statement: "Q: Are those all related to the [back pain], or do
26  you think those are just age? A: Probably maybe both."  (Weiss's Response #27, p. 92:15-18.)

Furthermore, Alere has produced evidence tending to show that Weiss was not "substantially limited" in this life activity. A substantial limitation in a major life activity occurs when a person is "unable to perform the major life activity" or is "significantly restricted as to condition, manner or duration under which [she] can perform a particular major life activity as compared to . . . the average person." *Coons,* 383 F.3d at 885. Weiss has not met this standard. First, some of the conditions comprising Weiss's alleged impairment did not arise until February and March 2008—months after she initially refused to commute. (Weiss Depo. #26-2, pp. 69-71 (discussing gallbladder problems and medication prescribed for back pain).) Even then, Weiss acknowledged that her gallbladder issues did not limit her daily activities, (*id.* at p. 199:5-21), and that her back pain was intermittent, (*id.* at p. 91:23-25). Second, Weiss had commuted the 460 miles to Alere's office in Reno from Henderson during her first year of her employment—including travel to the Las Vegas airport from her Henderson home (about 7 miles), a 1 hour and 15 minute flight, renting a car in Reno, driving to a Reno hotel (about 3 miles), and then commuting to Alere's offices (about 6 miles each way)—seemingly without incident. (*Id.* at pp. 25-26.) Weiss had also offered to drive to Reno during the first few days of her remote position if the computer was not working (an offer later rescinded). (Alere's MSJ #26, Ex. 8.) And, indeed, she traveled extensively during the period of her alleged disability, including driving to Reno from Nevada City four days after refusing to report to Alere's call center in July 2007. (Exs. to Hilden Decl. #26-4, Ex. 12; Weiss Depo. #26-2, pp. 41-42. *See also* Alere's Motion for Summary Judgment #26, p. 5 n. 2; Exs. to Hilden Decl. #26-4, Ex. 14; Weiss Depo. #26-2, pp. 113:4-12, 97-98.) Third, Weiss's depression and "adjustment disorder" diagnoses surfaced in March 2008, though "adjustment disorder" is a "pretty benign diagnosis, meaning that a person has gone through some changes in life and they're having . . . some symptoms of either anxiety, depression, or both," (*id.* at Ex. 17, p. 34:16-19), and Weiss's depression was improving by October or November 2008 (Weiss's Depo. #26-2, p. 226:6-10). Importantly, Weiss testified that her depression "didn't affect [her] work." (*Id.* at pp. 226-27.) Fourth, Weiss never cited a disability when she declined to commute from Nevada

1   City to Reno. She cited "many different reasons, traveling inerstate [sic], weather, tolerance, time,"

2   but she did not cite her disability. (Exs. to Litov Decl. #26-7, Ex. C.) Furthermore, Weiss's

3   lawyer's initial letter to Alere noted that Weiss was both "tired" of traveling and of big cities, but

4   her lawyer did not mention a disability. (Exs. to Litov Decl. #26-8, Ex. J.) This evidence

5   demonstrates that Weiss did not, in fact, suffer a substantial limitation in her ability to travel.[8] *See,*

6   *e.g.*, *Dupre v. Charter Behavioral Health Sys. of Lafayette Inc.*, 242 F.3d 610 (5th Cir. 2001)

7   (holding that an employee's back injury, which prevented her from sitting or standing in one

8   position for more than one hour, was not "substantially limiting" because her impairment in these

9   activities was not severe "as compared with the average's person's ability").

10          Since Weiss has not demonstrated a substantial limitation to a major life activity, she has

11  failed to show that she had a "disability" within the meaning of the ADA. This finding also

12  undermines Weiss's retaliation claim. The commuting policy did not discriminate against Weiss on

13  the basis of any disability, and Weiss did not oppose the commuting policy on this basis. Rather,

14  Weiss opposed the commuting policy because it was not the deal she had thought she agreed to.

15  (Weiss Depo. #26-2, pp. 256-57.) When asked in her deposition, "So you weren't asking them for

16  an accommodation, you were just telling them the [employment] policy doesn't say I have to do it,"

17  she answered, "Basically, yeah." (*Id*. at p. 257:9-12. *See also id*. at p. 257:3-6 ("I don't want any

18  special treatment. It was not part of my condition to accept the position, and I'm not required to do

19  that [that is, commute on occasion to Reno] with the policy in place.").) Even if Weiss could

20  demonstrate that she opposed Alere's commuting policy on the basis of a reasonable belief in its

21  discriminatory character, she has failed to produce evidence of a causal link between her opposition

22  and her termination. For example, she offers no explanation for the six-month delay in between her

23  March 2008 refusal to commute and her September 2008 termination. *See Yartzoff*, 809 F.2d at

24

25          [8] The parties dispute whether Alere was aware of Weiss's conditions, but given the court's
26  finding that Weiss has not demonstrated a substantial limitation to a major life activity, the court does
    not reach this argument.

                                                    12

1  1376. Weiss has thus failed to carry her burden with respect to her prima facie case of retaliation

2  under the ADA.

3       Finally, as with Weiss's ADEA claims, Alere has demonstrated a legitimate

4  nondiscriminatory and nonretaliatory reason for Weiss's termination. Since Weiss has failed to

5  show that this reason was pretextual, she has failed to create a genuine issue of material fact

6  sufficient to withstand summary judgment.

7       **C.  Harassment Claims**

8       Weiss has alleged a hostile work environment claim under "42 U.S.C. § 2000e, *et*

9  *seq*."—that is, under Title VII. (Complaint #1, p. 6.) However, Weiss has not alleged

10  discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-

11  2(a)(1). Thus, Weiss has failed to allege that she belongs to a class protected by Title VII. *See, e.g.,*

12  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (requiring the plaintiff to

13  show membership in a class protected by Title VII in order to state a prima facie case under that

14  statute).

15       Weiss responds that she simply cited the wrong statute, and that her hostile work

16  environment claim is a claim falling under the ADEA, the ADA, and California state law. In reply,

17  Alere has pointed to Weiss's failure to exhaust her administrative remedies for such a claim

18  because the hostile work environment charge was not contained in the charges Weiss filed with the

19  EEOC. The problem with Alere's argument is that it is mistaken: Weiss identified "harassment" on

20  the basis of age and disability in the charges she filed with the EEOC. (Alere's MSJ #26, Ex. 16.)

21       Still, Weiss's hostile work environment claim fails. First, it is not clear whether a hostile

22  work environment claim properly lies under either the ADA or the ADEA in this Circuit. *See*

23  *Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003) ("Our court has not yet held that

24  such a claim [under the ADA] exists."); *see also* Ming W. Chin *et al*., *Cal. Prac. Guide*

25  *Employment Litigation* § 8:280 (2012) ("Neither the United States Supreme Court nor the Ninth

26  Circuit has addressed the viability of such a claim [under the ADEA.]"). Even if it did, however,

13

1   Weiss would have to make out the following elements: (1) she was subjected to unwelcome

2   harassment (2) because of her disability (or age), and (3) the conduct was sufficiently severe or

3   pervasive to alter the conditions of her employment and create an abusive work environment. *See*

4   *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (discussing a hostile

5   work environment claim under Title VII); *see also Silk v. City of Chicago*, 194 F.3d 788, 804 (7th

6   Cir. 1999) (discussing a hostile work environment claim under the ADA by analogy to a hostile

7   work environment claim under Title VII); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th

8   Cir. 2011) (discussing a hostile work environment claim under the ADEA by analogy to a hostile

9   work environment claim under Title VII).

10          Weiss is unable to demonstrate a genuine issue of material fact with respect to the second

11   and third elements of this claim. Weiss has not shown that Alere's unwelcome conduct was

12   "because of" her disability or age. Weiss identifies the harassment as "unwarranted scrutiny,

13   reprimands and poor performance reviews, abusive and intimidating communications . . . threats,

14   and ultimately termination." (Weiss's Response #27, p. 18:17-20.) Weiss cites her poor

15   performance reviews, two emails she sent to Alere management in which she complains of

16   harassment in the form of unwarranted scrutiny ("Why these human error mistakes intense?" Weiss

17   inexplicably asks in one of these emails), and her deposition testimony. (Exs. to Geyman Decl. #29,

18   Exs. C, R, U; Weiss Depo #26-2, pp. 247-52, 248:20-22.) This evidence supports only one breed of

19   harassment, unwarranted scrutiny, but it does so without reference to Weiss's alleged disability or

20   her age. And as explained by Alere, the scrutiny visited upon Weiss was, in fact, warranted. For

21   instance, one of Weiss's performance reviews states, "The receivers of Pat's written

22   communications frequently can not [sic] figure out what she means." (Exs. to Geyman Decl. #29,

23   Ex. C.) Therefore, Alere's scrutiny of Weiss was fully warranted by legitimate and

24   nondiscriminatory reasons, meaning both that such scrutiny was not "because of" Weiss's disability

25   or age nor sufficiently "severe and pervasive" to create an abusive environment.

26   ///

14

1

### D.  FEHA Claims

2    Weiss has also alleged California state law claims under California's Fair Employment and

3 Housing Act ("FEHA"), Cal. Gov't Code § 12940 *et seq.*, for age- and disability-based harassment

4 and retaliation. However, Weiss has failed to exhaust her administrative remedies under California

5 law. While Weiss filed charges of discrimination with the Nevada Equal Rights Commission

6 ("NERC"), (Alere's MSJ #26, Ex. 16), she did not filed charges with California's Department of

7 Fair Employment and Housing ("DFEH") as required by California law. *See Romano v. Rockwell*

8 *Internat., Inc.*, 926 P.2d 1114, 1121 (Cal. 1996).

9    Weiss argues that a "worksharing" agreement between the EEOC and the DFEH means that

10 her charges were constructively filed with the DFEH when she filed them with the NERC. The

11 reasoning is that, since Weiss constructively filed her charges with the EEOC when she filed them

12 with the NERC, and since California's DFEH and the EEOC have a similar constructive-filing

13 relationship, Weiss's filing with the NERC operated as a filing with the DFEH. Whether this

14 transitive property of employment discrimination filings holds—a dubious proposition—"[a]n

15 EEOC right-to-sue letter does not satisfy the jurisdictional requirement of exhaustion of remedies

16 as to FEHA claims." *Alberti v. City & Cnty. of San Francisco Sheriff's Dep't*, 32 F. Supp. 2d 1164,

17 1174 (N.D. Cal. 1998) (citing *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718,

18 1724 (1994)). Therefore, since Weiss has not received a right-to-sue letter from the California

19 agency, this court lacks jurisdiction over her FEHA claims. *Id.*

20

### E.  Emotional Distress Claims

21    Weiss has conceded her negligent infliction of emotional distress claim, (Weiss's Response

22 #27, p. 21:3-7), and therefore the court only addresses her claim for intentional infliction of

23 emotional distress. Under California law, such a claim consists of (1) extreme and outrageous

24 conduct with the intention of causing (or reckless disregard of the probability of causing) emotional

25 distress, (2) the plaintiff's severe and extreme emotional distress, and (3) actual and proximate

26 causation by the defendant's outrageous conduct. *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009).

1  Conduct is "extreme and outrageous" where it "exceeds all bounds of that usually tolerated in a

2  civilized community." *Id.*

3      Here, the court has found that Alere did not engage in discriminatory conduct, but it is that

4  conduct that Weiss points to as extreme and outrageous. In light of the court's findings, therefore,

5  Weiss cannot maintain her intentional infliction of emotional distress claim (even assuming, for the

6  sake of argument, that discrimination is "extreme and outrageous" conduct, *see Janken v. GM*

7  *Hughes Electronics*, 46 Cal. App. 4th 55, 80 (1996) (holding that a claim for "improperly

8  motivated" management decisions sounds in discrimination, not in intentional infliction of

9  emotional distress)).

10 **IV.     Conclusion**

11     Weiss has failed to demonstrate a genuine issue of material fact with respect to her

12 discrimination, retaliation, harassment, and other claims. Summary judgment is therefore

13 appropriate.

14     IT IS THEREFORE ORDERED that Alere's Motion for Summary Judgment (#26) is

15 GRANTED. The Clerk of Court is directed to enter judgment in favor of Alere.

16     IT IS SO ORDERED.

17     DATED this 4th day of June, 2013.

18

19                                                 _____
                                                    LARRY R. HICKS
                                                    UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

16